**In the Matter of the Termination of the Parent–Child Relationship of D.G., the child,**

and

**Belinda Grubb and Tommy Grubb, the parents.**

No. 53A01–9808–JV–294.

Court of Appeals of Indiana.

Dec. 11, 1998.

Michael J. Spencer, Bloomington, for appellant.

Stephen Ross Galvin, Bloomington, for appellee Monroe County Office of Family and Children.

Stacee E. Evans, Andrews, Harrell, Mann, Chapman & Coyne, Bloomington, for Court Appointed Special Advocate Lou Horton.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Belinda Grubb appeals from the termination of her parental rights with respect to her daughter, D.G.[1] The issues presented for our review are:

1. Whether the trial court committed fundamental error when it admitted evidence regarding the termination of Belinda's parental rights with respect to her other child, T.H.

2. Whether the Monroe County Office of Family and Children presented sufficient evidence to sustain the termination of Belinda's parental rights.

We affirm.

---

1. D.G.'s father, Tommy, has initiated a separate appeal of the termination of his parental rights under Cause No. 53A01–9806–JV–212.

## FACTS

On January 2, 1997, the Monroe County Office of Family and Children ("OFC") filed a petition alleging that D.G., then approximately five months old, was a Child in Need of Services ("CHINS"). After a hearing on March 24, 1997, for which D.G.'s parents, Belinda and Tommy, failed to appear, the court heard evidence and granted the OFC's petition. Another hearing was held the following week and, again, Belinda and Tommy failed to appear. At the second hearing, Belinda was ordered to (1) attend supervised visits with D.G.; (2) participate in parenting classes; (3) obtain a medical evaluation; (4) attend a battered women's group once each week; and (5) participate in counseling.

On January 7, 1998, the OFC filed a Verified Petition for Termination of Parental Rights to terminate the parent-child relationship between D.G. and her parents. After an evidentiary hearing on March 31, 1998, the court determined that continuation of the parent-child relationship would pose a threat to D.G., that termination was in the child's best interest and that the OFC had presented a satisfactory plan for D.G.'s care. The court then terminated Belinda's and Tommy's parental rights.

## DISCUSSION AND DECISION

### Issue One: Evidence of Prior Termination

■ Belinda first alleges that the trial court committed fundamental error[2] when it admitted evidence regarding the termination of Belinda's parental rights with respect to another daughter, T.H. That evidence indicated that T.H. had been found to be a child in need of services based on Belinda's neglect, that Belinda had been offered extensive services by the OFC and that, despite those services, Belinda's parental rights with respect to T.H. had been terminated in 1995. Belinda insists that this evidence is irrelevant

and that its prejudicial effect outweighs its probative value. *See* Ind. Evidence Rules 401–403. We cannot agree.

■ A trial court should judge a parent's fitness to care for her children as of the time of the termination proceeding, taking into consideration evidence of changed conditions. *J.K.C. v. Fountain County Dep't of Pub. Welfare,* 470 N.E.2d 88, 90 (Ind.Ct.App.1984). However, recognizing the permanent effect of termination, this court has stated that the trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *Id.* (citing *Matter of Perkins,* 170 Ind.App. 171, 352 N.E.2d 502 (1976)). Based on that rule, trial courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support and lack of adequate housing and employment. *See Matter of Danforth,* 542 N.E.2d 1330, 1330 (Ind. 1989); *Matter of M.B.,* 666 N.E.2d 73, 76 (Ind.Ct.App.1996), *trans. denied; Odom v. Allen County Dep't of Pub. Welfare,* 582 N.E.2d 393, 396 (Ind.Ct.App.1991); *J.K.C.,* 470 N.E.2d at 91–92.

■ In a related context, we have held that evidence of a parent's prior involvement with the OFC regarding four of her other children, including CHINS petitions filed on behalf of those children, was admissible in a CHINS proceeding as character evidence under Indiana Evidence Rule 405. *Matter of J.L.V. Jr.,* 667 N.E.2d 186, 191 (Ind.Ct.App. 1996). That rule provides in pertinent part:

(b) Specific Instances of Conduct. In cases in which *character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct* .

Ind. Evid. Rule 405(b) (emphasis added). Rule 405 applies when a person's character is

**2.** Belinda failed to object to admission of this evidence at trial and, thus, invokes the fundamental error rule on appeal. With respect to criminal appeals, error is "fundamental" if it is so prejudicial to the rights of a defendant that it makes a fair trial impossible. *Baird v. State,* 688 N.E.2d 911, 917 (Ind.1997), *cert. denied,* —— U.S.

——, 119 S.Ct. 122, 142 L.Ed.2d 99 (1998). Fundamental error constitutes "a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Id.*

a material fact that determines the parties' rights and liabilities under the substantive law. *J.L.V.*, 667 N.E.2d at 190. In holding that a parent's character is at issue in a CHINS proceeding, we stated:

> [A] parent's past, present and future ability to provide sufficient care for his or her child forms the basis for a CHINS adjudication and ... the parent's character is an integral part of assessing that ability.

*Id.*

■ Given the nature of the inquiry, a parent's character is also an integral factor in assessing a parent's fitness and in determining the child's best interest. In the instant case, the challenged evidence demonstrates that despite the OFC's previous intervention, Belinda failed to develop adequate parenting skills or improve the conditions in her home that resulted in the termination of her parental relationship with T.H.[3] Such evidence also demonstrates an habitual pattern of conduct and is relevant in determining whether Belinda has developed or is likely to develop the ability or interest to provide a satisfactory home for D.G. We hold that specific instances of a parent's character, including evidence regarding a previous termination of parental rights, is admissible character evidence in a subsequent termination proceeding. Thus, we reject Belinda's fundamental error claim.[4]

**Issue Two: Sufficiency of the Evidence**

■ Next, Belinda claims that the OFC presented insufficient evidence to sustain the termination of her parental rights. Again, we must disagree.

■ The record reveals that the trial court entered specific findings and conclusions on its own motion. As a result, the specific findings control only as to the issues they cover, and the general judgment controls as to the issues upon which the court has not made findings. *Wagner v. Grant County Dep't of Pub. Welfare*, 653 N.E.2d 531, 532 (Ind.Ct.App.1995). The specific findings will not be set aside unless they are clearly erroneous and we will affirm the general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it. *M.B.*, 666 N.E.2d at 76. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Wardship of J.C. D.D. v. Allen County Office of Family and Children*, 646 N.E.2d 693, 694 (Ind.Ct.App.1995), *trans. denied.* Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the verdict. *Id.*

■ To effect the termination of a parent-child relationship, the State must establish the elements of Indiana Code § 31-6-5-4(c) (recodified at Indiana Code § 31-35-2-4) by clear and convincing evidence. *J.K.C.*, 470 N.E.2d at 91. To terminate the parent-child relationship, the State must prove:

> (1) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>
> (2) there is a reasonable probability that:
>
> (A) the conditions that resulted in the child's removal will not be remedied; or
>
> (B) the continuation of the parent-child relationship poses a threat to the well-being of the child;
>
> (3) termination is in the best interests of the child; and
>
> (4) there is a satisfactory plan for the care and treatment of the child.

IND.CODE § 31-6-5-4(c).

■ Involuntary termination of parental rights is the most severe action a juvenile court can take. *Doe v. Daviess*

---

3. The evidence shows that T.H. was removed from the home because of malnutrition and neglect.

4. We note that there is express statutory authority for the admission of prior bad acts in CHINS proceedings. Indiana Code § 31-34-12-5 (formerly IND.CODE § 31-6-7-13) provides that "[e]vidence that a prior or subsequent act or omission by a parent, guardian, or custodian injured a

child is admissible in proceedings alleging a child is a child in need of services...." The statutory procedure for the termination of parental rights does not contain a similar provision. Nevertheless, the Indiana Rules of Evidence provide a means for the admission of character evidence, including evidence of specific acts, in a termination proceeding in the absence of express statutory authority.

*County Div. of Children and Family Serv's*, 669 N.E.2d 192, 194 (Ind.Ct.App.1996), *trans. denied.* Termination severs all rights of a parent to his or her children. *Id.* Therefore, termination is designed to be a last resort, available only when all other reasonable efforts have failed. *Id.* This policy is in recognition of the constitutional rights of parents to the custody of their children and the State's authority to interfere with that right only in certain limited circumstances. *Id.* A parent's right to establish a home and raise her children is protected by the Fourteenth Amendment to the United States Constitution, but parental interests are not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate parental rights. *Stone v. Daviess County Div. of Children and Family Serv's*, 656 N.E.2d 824, 828 (Ind.Ct.App.1995), *trans. denied.* The purpose of terminating parental rights is not to punish parents but to protect children. *Matter of A.N.J.*, 690 N.E.2d 716, 720 (Ind. Ct.App.1997).

Here, the evidence shows that D.G. was born on July 22, 1996. At some point following her birth, Belinda and Tommy were married. On or about December 11, 1996, the couple had a fight, after which Tommy was arrested for battering Belinda. During the investigation, Belinda informed the police that Tommy had struck D.G. in the head which caused extensive bruising.[5] Soon thereafter, in March of 1997, D.G. was removed from her home.

After two hearings, neither of which Belinda or Tommy attended, D.G. was declared to be a child in need of services, and Belinda was ordered to attend supervised visits with D.G. and parenting classes, obtain a medication evaluation and participate in counseling and classes for battered women. According to the record, Belinda failed to comply fully with the court's order. She attended all of her parenting classes and two of the counseling sessions but never attended the classes for battered women. Initially, Belinda participated in supervised visits with D.G. but in February of 1998, she traveled to Illinois and did not visit D.G. from February 12 until March 12, 1998.

The record further shows that Belinda's lifestyle is unstable and potentially dangerous for D.G. She does not have a job or a permanent residence. The trial court specifically cited Belinda's choice of mates as a threat to D.G. Tommy was convicted of battering Belinda three times in 1996, at least once when she was pregnant with D.G. Nevertheless, at the time of the termination, the couple was again living together following Tommy's release from jail. Tommy has either refused or, due to his incarceration, been unable to attend the services ordered by the court, including substance abuse assessment and treatment and parenting and anger management classes. Tommy has abused D.G. in the past and his inability to control his substance abuse and anger poses a threat to D.G.'s well being. From this, we conclude that the evidence supports the court's conclusion that termination of the parent-child relationship is in D.G.'s best interest.

Finally, the OFC demonstrated that it has a satisfactory plan for D.G.'s care and treatment. Suzanne Donnelly, an OFC caseworker, testified that D.G. is highly adoptable and that the OFC intends to seek adoptive parents for her. The OFC has sustained its burden under Indiana Code § 33–6–5–4(c). Specifically, the evidence establishes there is a reasonable probability that continuation of the parent-child relationship poses a threat to D.G., that termination is in her best interest and that the OFC has a satisfactory plan for her care and treatment.

Affirmed.

SHARPNACK, C.J., and BAILEY, J., concur.

---

5. She later retracted her statement and told police that D.G.'s injuries resulted from mere accidents. Based on her retraction, Belinda was charged with obstruction of justice.