**In re the Matter of the INVOLUNTARY TERMINATION OF the PARENT-CHILD RELATIONSHIP OF A.K. and An.K, Minor Children, and their Mother, Martha KILBERT.**

**Martha Kilbert, Appellant–Respondent,**

v.

**Marion County Office of Family and Children, Appellee–Petitioner,**

**Child Advocates, Inc., Appellee–Guardian ad Litem.**

No. 49A02–0101–JV–13.

Court of Appeals of Indiana.

Aug. 15, 2001.

Publication Ordered Sept. 26, 2001.

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, IN, Attorney for Appellant.

Jacquelyn F. Moore, Indianapolis, IN, Attorney for Appellee Marion County Office of Family and Children.

Loretta A. Oleksy, Indianapolis, IN, Attorney for Appellee Child Advocates, Inc.

## OPINION

VAIDIK, Judge

### Case Summary

Appellant, Martha Kilbert, appeals the termination of her parental rights to A.K. and An.K. She argues that the State failed to provide sufficient evidence to support the termination of her parental rights. Kilbert also alleges that the trial court abused its discretion in denying her motion to stay the termination pending the appeal and that the Guardian Ad Litem (GAL) is not a proper party to this appeal. We find that the State presented sufficient evidence to support the termination of Kilbert's parental rights, the trial court properly denied the motion to stay the termination, and the GAL is a proper party to this appeal. Thus, we affirm.

### Facts and Procedural History

Kilbert gave birth to three children, L.M.K., A.K., and An.K. L.M.K. lives with his biological father and is not involved in this action against Kilbert. A.K. was born on September 21, 1997, and test-

ed positive for cocaine. Kilbert used cocaine during her pregnancy twice a week from her fifth month of pregnancy. A.K. was taken away from her and declared a Child In Need of Services (CHINS), but after she agreed to participate in services to deal with her drug abuse, A.K. was returned to her custody.

An.K. was born on January 13, 1999, and she also tested positive for cocaine at birth. On January 19, 1999, A.K. and An.K. were adjudicated to be CHINS. Kilbert admitted that the allegations of the CHINS petition were true, and the court filed its dispositional decree on the same day. Both children were removed from Kilbert's custody and eventually placed together with a foster mother.

Kilbert was ordered to participate in different services to help remedy the reasons for her children's removal. These services included: contacting the case manager every week; completing home-based counseling; completing a parenting assessment and following all recommendations; maintaining regular visitation with the children; and completing a drug and alcohol assessment and all recommended treatment plans. The Marion County Office of Family and Children (OFC) offered these services to Kilbert to allow her to regain custody of her children. Kilbert failed to complete these services. Her case manager, Rita Hughes, made referrals a second time for the same services, but again, Kilbert failed to participate. Kilbert did not maintain regular contact with Hughes and sometimes months would pass before Kilbert would contact her. Kilbert did not participate in home counseling. Kilbert completed the testing portion of her parenting assessment, but failed to complete the bonding portion of the assessment because she consistently missed visitation opportunities with her children. Based on her test answers, the testing

assessment placed her at an extreme risk for abusing or neglecting her children.

On January 19, 2000, the OFC filed a petition to involuntarily terminate the parent-child relationship between Kilbert and A.K. and An.K. By the time of the trial in November of 2000, A.K. and An.K. had been out of Kilbert's care for twenty-two months. During this time, Kilbert did not maintain regular visitation with her children. Kilbert admitted that she had used crack cocaine almost daily since December 1999, and that she had engaged in prostitution to get money to support her drug habit and pay for her necessities. When asked to describe her daughter, Kilbert testified that she could not stating "[n]o, I [sic] never really been around her much." Tr. P. 9. She also admitted that she had never contacted the children's foster mother to see how the children were doing. Kilbert further testified that she had used cocaine up to only three weeks before the trial.

An.K. was three months old when she was placed with the foster mother and A.K. was almost three years old. The foster mother is a developmental therapist who helps with the services that A.K. and An.K. need. An.K. still suffers from the effects of the cocaine she was exposed to before birth. She experiences hypertonicity which means that her muscles are tight. This kept her from rolling over, sitting up, crawling and walking in the normal progression of development. She no longer receives special therapy for this. An.K. also displays behaviors such as head banging and has difficulty learning the consequences of her actions. A.K. was underweight and developmentally delayed before being placed with the foster mother. He no longer has any special needs. The children have developed a strong bond with their foster mother and refer to her as "mommy." She would like to adopt

A.K. and An.K. and make them a permanent part of her family.

On December 15, 2000, the court issued findings and conclusions, granting the petition to terminate Kilbert's parental rights. The court found that the conditions leading to the children's removal in the first place were likely to continue and posed a threat to the well-being of A.K. and An.K. Kilbert filed a motion to reconsider, which the court denied. She also filed a motion to stay the enforcement of the termination pending this appeal, which was also denied.

### Discussion and Decision

Kilbert alleges that the trial court's findings and conclusions do not provide a nexus between her problems and the reasons her parental rights were terminated. Further Kilbert argues that the trial court's findings do not support the conclusion that termination was in the best interest of the children, and that the OFC's plan was satisfactory. Kilbert also contends that the court erred by not granting her motion to stay the enforcement of the termination order pending her appeal. Finally, Kilbert asserts that the GAL is not a proper party to this appeal as she failed to conduct any investigation and her position is identical to that of the OFC. We address each argument in turn.

In ordering the termination of the parental relationship between Kilbert and her children, the trial court made specific findings. We will not set aside the specific findings unless they are clearly erroneous, and we will affirm a general judgment on any legal theory supported by the evidence. *In re B.D.J.*, 728 N.E.2d 195, 199 (Ind.Ct.App.2000). "A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it." *Id.* (citing *Matter of D.G.*, 702 N.E.2d 777, 780 (Ind.Ct.App.1998)). In reviewing the termination proceedings, we

will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Therefore, we consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.*

Ind.Code § 31–35–2–4 sets out the elements that the OFC must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship. In order to terminate the parental rights, the OFC must show:

(A) One (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Kilbert does not dispute that her children were removed for more than six months before the termination proceedings.

## I. Nexus

■ Kilbert argues that her parental rights should not have been terminated because the OFC did not prove any nexus between her drug problems and her parenting. She alleges that the court's findings and conclusions failed to show a relationship between her drug problems and the legal prerequisites for termination. Specifically, Kilbert claims that the OFC failed to prove either that the conditions resulting in the children's removal would not be remedied or that the continuation of her relationship with the kids posed a threat to the well-being of the children. In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of witnesses. *Matter of A.N.J.*, 690 N.E.2d 716, 720 (Ind.Ct.App.1997). We consider only the evidence most favorable to the judgment. *Id.*

I.C. § 31–35–2–4(b)(2)(B) mandates that the State must prove either that the conditions which resulted in the children's removal from the parent would not be remedied or that continuing the parent-child relationship posed a threat to the child. Kilbert claims that the OFC did not sustain its burden in proving either element. We disagree.

■ To determine whether there is a reasonable probability that the conditions which resulted in the removal of the children will not be remedied, the trial court should judge a parent's fitness to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *J.K.C. v. Fountain County Dep't of Pub. Welfare*, 470 N.E.2d 88, 92 (Ind.Ct.App.1984). Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.*

Here, the evidence reveals that on January 19, 1999, Kilbert signed an Agreed Entry, admitting that the allegations of the CHINS petition against her were true. The petition alleged in part that An.K. was born cocaine positive and that Kilbert admitted to using cocaine until just prior to An.K.'s birth. A.K. was also born cocaine positive sixteen months before An.K. After his birth, he was declared a CHINS and taken from Kilbert. She agreed to go through rehabilitation and A.K. was returned to her, but she continued her cocaine abuse during her pregnancy with An.K. A.K. and An.K. were removed from Kilbert due to her continued drug abuse.

The CHINS decree ordered Kilbert to attend and successfully complete various programs including a drug and alcohol assessment. However, Kilbert did not successfully complete these programs. She completed a drug and alcohol evaluation, but failed to complete the recommended treatment. On two separate occasions Kilbert completed in-patient drug treatment for her cocaine addiction and attended individual and group counseling sessions. However, each time she tested positive again for cocaine and failed to complete the follow-up care. Kilbert would go months without contacting her case manager, Rita Hughes. Judith Bell, an addictions counselor, testified that Kilbert admitted to almost daily use of cocaine over a period of three to four years. In fact, at the time of the termination hearing, Kilbert admitted that she had only been clean for three weeks. Bell recommended that Kilbert complete outpatient therapy and attend twelve-step meetings. Kilbert did

not complete these programs and was discharged for a lack of participation.

■ The evidence reveals that Kilbert has not successfully completed any follow-up programs to help her overcome her drug addiction. She was still using drugs after her children were taken from her, and she was informed that continued use could cause her to lose her parental rights. Although she completed some in-house counseling sessions, she never took all the steps necessary to defeat her drug addiction. There was no evidence to show that she successfully treated her drug abuse or addressed her parenting problems. Therefore, the trial court did not err in determining that the conditions which led to the removal would not be remedied.

■ The trial court also concluded that maintaining the parent-child relationship posed a threat to the well-being of A.K. and An.K. The evidence reveals that Kilbert only partially completed the parenting assessment portion of her counseling. She failed to keep the scheduled visitation with her children and thus the bonding assessment could never be completed. Bell testified that drug abuse can impair a person's parenting ability and the stress of parenting could cause Kilbert to relapse. Ora Markey, a substance abuse assessment counselor, testified that Kilbert admitted to engaging in prostitution to make money to support her drug habit. Finally, Kilbert's parenting assessment revealed that she was an extreme risk for abusing or neglecting her children without any intensive services. Even so, she did not complete the recommended programs after her children were taken away.

There was no evidence presented to support the notion that Kilbert has overcome her addictions. Kilbert's continued drug use is a threat to the well-being of the children if they were to stay with her. The trial court did not err in finding that

the OFC met its burden under Indiana Code § 31–35–2–4(b)(2)(B).

## II. Best Interests

Kilbert also argues that the OFC's plan to keep the children with the foster mother and have her adopt them was not in the best interests of the children. Under I.C. § 31–35–2–4, the OFC must also prove that termination is in the best interests of the children and that it has a satisfactory plan for the treatment and care of the children. Kilbert challenges the adequacy of the OFC's plan by arguing that it would be in the best interests of the children to allow the children to stay with her niece who was willing and able to raise the children.

■ The OFC must show that terminating the parent-child relationship is in the best interests of the children. We are mindful that in determining what is in the best interests of the children, the court is required to look beyond the factors identified by the office of family and children, and to look to the totality of the evidence. *In re T.F.*, 743 N.E.2d 766, 776 (Ind.Ct. App.2001) (citing *J.K.C.*, 470 N.E.2d at 92). In so doing, the trial court must subordinate the interests of the parents to those of the children involved. *Id.* at 776. However, the trial court need not wait until the children are irreversibly influenced such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *Id.*

■ We find that the record contains sufficient evidence that termination of Kilbert's parental rights is in the best interests of A.K. and An.K. However, the GAL testified that she felt it would be in the best interests of the children to terminate Kilbert's parental rights. Hughes, Kilbert's case manager, testified that Kilbert has not demonstrated an ability to mother

her children and has consistently relapsed into drug use. She further testified that certain relatives had been investigated as possible placements for the children but were not approved. Despite Kilbert's arguments that it would be in the best interests of the children to place them with her niece, the niece did not know the children and the children did not know her. Also, both A.K. and An.K. suffered from Kilbert's drug use and have thrived since being placed with the foster mother. This evidence combined with the fact that Kilbert has failed to treat her drug addiction, failed to make the visitation meetings with A.K. and An.K., and failed to complete her parenting assessment shows that Kilbert has consistently placed her own interests before her children's interests. We find that the trial court did not err in concluding that termination would be in the best interests of the children.

Kilbert also claims that her niece was as good an adoptive parent for her children as the foster mother. However, we note that the statute only requires that the OFC present a satisfactory plan for the care and treatment of the children. The plan does not need to be detailed as long as it offers a general sense of the direction in which the children will be going after the termination. *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind.Ct.App.2000). The court allowed Kilbert to present evidence concerning her claim that her children should be placed with her niece. The OFC presented evidence that both A.K. and An.K. were thriving under the care of the foster mother. The foster mother wanted to adopt the children after the termination. We assume that the trial court considered all the evidence in making its decision. Furthermore, adoption is a satisfactory plan. *See Matter of A.N.J.*, 690 N.E.2d 716, 722 (Ind.Ct.App.1997).

### III. Motion to Stay

Kilbert argues that the trial court abused its discretion in denying her motion for a stay. She contends that A.K. and An.K. would be better served by maintaining foster care until after the appeals process is completed instead of terminating her parental rights and allowing adoption proceedings to begin immediately. Kilbert maintains that granting the stay would not have prejudiced anyone because if the termination is overturned, the adoptions would also be overturned. She also claims that the denial of the stay could damage the relationships between children and their parents. In reviewing a motion to stay proceedings, we apply an abuse of discretion standard of review. *In re A.D.*, 737 N.E.2d 1214, 1216 (Ind.Ct.App.2000). An abuse of discretion is found only when the trial court's action is clearly erroneous, against the logic and effect of the facts before it and the inferences which may be drawn from it. *Matter of R.R.*, 587 N.E.2d 1341, 1343 (Ind.Ct.App.1992).

However, other than general arguments, Kilbert has not offered any argument as to why the trial court abused its discretion in denying her request for a stay. The evidence establishes that Kilbert never had a relationship with her children nor did she attempt to have one. She consistently missed visitation meetings with her children. She did not inquire of the foster mother concerning the children and how they were doing. Both the GAL and the case manager testified that the foster mother has provided a safe and stable environment for the children and that the children have bonded with each other and their foster mother. We cannot say the trial court abused its discretion by denying the stay and thus immediately creating a stable environment for the children.

### IV. Guardian Ad Litem

Finally, Kilbert argues that the GAL should not be a party to this appeal because she presented no evidence independent from the OFC and she does not hold an independent position on appeal. She asserts that because the GAL failed to conduct an independent assessment of the children, did not conduct a true home study, and did not conduct an investigation into the cause of Kilbert's problems, the GAL's sole purpose was to verify and support the OFC. Thus, Kilbert contends that she is prejudiced because she is forced to defend her appeal against two identical interests.

 Initially, we note that this is the first time Kilbert has raised this issue on appeal. Counsel for GAL filed an appearance on January 31, 2001. Kilbert did not object to the GAL being a party at the termination hearing, nor has she filed any separate motions objecting to the GAL's appearance. Therefore, Kilbert has waived this issue.

 Waiver notwithstanding, the GAL is a proper party to this appeal. A GAL must be appointed by the court when a parent objects to a termination proceeding. *See* Ind.Code § 31–35–2–7. Further, Ind. Appellate Rule 17(A) states that "[a] party of record in the trial court or Administrative Agency shall be a party on appeal." Thus, there is both statutory authority and an appellate rule allowing the GAL to be a party to an appeal of this nature. The simple fact that the interests of the OFC and the GAL converge does not automatically disqualify either of the parties. The OFC primarily represents the State, while the GAL represents the children's interests. Therefore, the GAL is a proper party to this appeal.

Affirmed.

DARDEN and MATHIAS, JJ., concur.

### ORDER

This Court having heretofore handed down its opinion in this cause on August 15, 2001, marked Memorandum Decision, Not for Publication;

Comes now the Appellee Child Advocates, Inc., by counsel, and files herein Motion for Publication of Decision, alleging therein that the Court's decision clarifies that a Guardian Ad Litem is a proper party to the appeal, that the issue of whether the Guardian Ad Litem is a proper party to an appeal from a decision terminating the parent-child relationship is one of first impression in Indiana and prays this Court to order the publication of the decision in this appeal, which said Motion is in the following words and figures, to-wit:

And the Court, having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellee's Motion for Publication of Decision is granted and this Court's opinion heretofore handed down in this cause on august 15, 2001, marked Memorandum Decision, Not for Publication, is now ordered published.