## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 05 2019, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile Public Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of A.W. and S.W. (Minor Children) and

L.W. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

June 5, 2019

Court of Appeals Case No.
18A-JT-2834

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

Trial Court Cause Nos.
45D06-1711-JT-271
45D06-1711-JT-272

and Lake County Court
Appointed Special Advocate,[1]

*Appellee-Intervenor.*

**Mathias, Judge.**

L.W. ("Mother") appeals the Lake Superior Court's termination of her parental rights to two of her children, A.W. and S.W. Mother argues four issues, which we restate as:

> I. Whether the trial court abused its discretion when it denied her motion to continue because she had started another treatment program days before the termination hearing;
>
> II. Whether the Department of Child Services ("DCS") proved by clear and convincing evidence that the conditions that resulted in removal of the children are unlikely to be remedied;
>
> III. Whether DCS proved by clear and convincing evidence that the continuation of the parent-child relationship poses a threat to the well-being of the children; and,
>
> IV. Whether termination is in the best interests of the children.

We affirm.

---

[1] Donald W. Wruck entered an appearance on behalf of the Lake County Court Appointed Special Advocate but did not file a brief on appeal.

# Facts and Procedural Background

[3]     Mother has six children, A.W., S.W., La.W., E.G., La. B., and Lo. B. The children have four separate fathers, all of whom were not involved with the children. In February of 2014, DCS received reports that the children were missing several days of school and/or showing up tardy. As a result, Mother entered into an informal adjustment ("IA") where Mother agreed to send the children to school on time and to complete a parenting assessment. During the pendency of the IA, DCS received a report that the two youngest children were walking around the neighborhood unattended. Investigation showed that Mother was often absent or sleeping and that A.W. and S.W. were often taking care of the younger children. DCS also learned that Mother was being evicted and did not have anywhere to go. As a result, DCS removed the children and filed a CHINS petition in May of 2014. The CHINS court ordered Mother to complete a parenting assessment, an initial clinical assessment, home-based casework services, and supervised visitation.

[4]     Mother frequently used marijuana and cocaine. Mother attended an inpatient rehabilitation program at Transitions from April 2015 through February 2016. She relapsed shortly after leaving the program and was unable to obtain housing due to the relapse. DCS then referred her to an intensive outpatient program. However, she did not begin this program until two years later, in March or April 2018. Although she completed this second rehabilitative program, she continued to test positive for marijuana and cocaine. Tr. p. 51.  In September of 2018, Mother requested that DCS refer her to services she had

sought out on her own. Mother began another program days before the termination hearing. At the time of the termination hearing, Mother had not been drug screened since June of 2018.

[5] Mother was inconsistent with visitation. The Family Case Manger ("FCM") testified that she mostly did not show up and that maternal grandmother was allowed visitation largely so the children would see a family member during this time.[2] Tr. p. 38. DCS made a referral for family therapy to take place after visitation; however, since Mother rarely attended visitation, this family therapy never took place. The only period that Mother was consistent with services and visitation was for ten months when she was attending the inpatient rehabilitation program and the children were transported to her. Mother visited the children in April 2017 and then again in December 2017. Because of Mother's lack of consistency with visitation, the CHINS court ordered cessation of the visitation. Mother requested visitation in May 2018, which the trial court denied because she had not demonstrated compliance for ninety days.

[6] Throughout the pendency of the CHINS matter, Mother lived in multiple places: at Transitions, at her mother's home in Illinois, in Kokomo, Indiana, and in Gary, Indiana. The longest continuous employment mother held since DCS became involved that the FCM was aware of was for approximately six

---

[2] Maternal grandmother regularly attended visitation; however, she routinely brought gifts for only one of the children. After the FCM informed grandmother that she would have to bring gifts for all of the children, she stopped attending visitation.

months. Mother demonstrated a pattern of losing contact with the FCM for several months and then would contact the FCM, inform her that she had moved, and request services. After a May 2018 hearing, the FCM did not receive contact from Mother until September 2018.

[7] The FCM testified that A.W. and S.W. had been "the most emotional" of all the children. Tr. p. 43. A.W. held his anger in and got into fights at school frequently. Because of his disruptive and disrespectful behavior at school, he was expelled from public school and attended day treatment. At the time of the termination hearing, he had just returned to public school. The FCM testified that A.W. had "lost hope" that his Mother would get him and his siblings back. Tr. p. 44. She observed both A.W. and S.W. demonstrated improved behavior once visitations with Mother stopped.

[8] Austin Malone, who was the individual therapist for both A.W. and S.W., and who supervised visitation with Mother, testified. He stated that both A.W. and S.W. would challenge authority. He testified that S.W. had taken on parental roles when he was living with Mother, and once he was able to be a kid again, he would "push up against" situations in which he was not the "executive decision maker." Tr. p. 87. He also testified that S.W. was confused when visitations stopped, and he demonstrated behavioral issues in multiple foster homes. Malone testified that S.W. "was constantly raging against discipline, because he couldn't see the love" and felt like discipline was rejection. Tr. p. 88. Malone attributes A.W. and S.W.'s angry behavior to a lack of stability.

[9] Malone also testified that S.W. has progressed significantly since placement in his pre-adoptive home. He observed,

> [S.W.'s foster mother] has really, you know, she hunkered down with him and just kept on trying to instill the sense of structure around him, and also reinforcement, you know, where he wouldn't ever perceive her discipline as some type of rejection. He always – he's feeling the love, when she rewards him for doing the right thing. He's very happy about that. [S.W.] has come a long way, a long way from where he was at this same point last year, when he was just getting in trouble all the time.

Tr. p. 92. He agreed that Mother was not "a monster" but that both A.W. and S.W. were receiving the stability they need in their foster homes. *Id.*

[10] DCS petitioned for termination in July of 2016. However, DCS withdrew its petition several months later because the children were no longer in pre-adoptive placements. DCS filed another petition for termination of parental rights for all of the children on November 30, 2017. The trial court held a hearing on DCS's petition on October 24, 2018. As A.W. and S.W. were the only children in pre-adoptive placements, DCS only proceeded regarding these two children. Mother was provided notice of the termination hearing by court order, and DCS provided notice to N.S., father of A.W., and D.C., father of S.W., by publication. Prior to the start of the hearing, Mother moved to continue the termination hearing on the grounds that she had begun inpatient treatment days before the hearing. The trial court denied her motion to continue and heard the matter on the merits. After the hearing, the trial court

entered an order terminating Mother's parental rights to A.W. and S.W. Mother now appeals.

## Discussion and Decision

### *I. Continuance*

Indiana Rule of Trial Procedure 53.5 provides for a continuance upon good cause. The decision to grant or deny a continuance is within the sound discretion of the trial court, and we will not reverse that decision unless the trial court has abused its discretion. *Homehealth, Inc. v. Heritage Mut. Ins. Co.*, 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), *trans. denied.* A trial court abuses its discretion when it reaches a conclusion which is clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom. *Id.* If good cause is shown for granting the motion, denial of a continuance will be deemed to be an abuse of discretion. *Koors v. Great Southwest Fire Ins. Co.*, 530 N.E.2d 780, 783 (Ind. Ct. App. 1988); *See Ind. Trial Rule* 53.5.

When considering the appropriateness of a continuance within termination proceedings, the trial court may consider a parent's patterns with respect to attendance, communication, and participation in services during the CHINS case. *In re J.E.*, 45 N.E.3d 1243, 1247 (Ind. Ct. App. 2015), *trans. denied*. The party moving for a continuance must show that she or he is prejudiced by the denial. *In re K.W.*, 12 N.E.3d 241, 243–44 (Ind. 2014). The party moving for a

continuance must also show that he or she is "free from fault" *In re B.H.*, 44
N.E.3d 745, 748 (Ind. Ct. App. 2015) (citations omitted), *trans. denied*.

[13] Here, Mother requested a continuance on the grounds that she had just entered
a drug rehabilitation program and that pre-adoptive parents had only been
identified for two of her six children. DCS objected, noting that Mother had
started drug treatment and relapsed, and that she had failed to avail herself of
drug treatment programs on earlier occasions. DCS further argued that the
children had been removed from Mother's care for approximately four and a
half years. DCS further noted that the agency was making diligent efforts to
find pre-adoptive homes for the other children and, while it strives to keep
siblings together, it was not required to do so. The Court Appointed Special
Advocate also joined in DCS's objection, stating that Mother's entry into the
treatment program was more relevant to Mother's defense than grounds for a
continuance. The trial court denied Mother's request, noting Mother does not
have grounds for a continuance where the two children at issue had been in a
pre-adoptive home for two years and where she had approximately four and a
half years to become sober prior to the most recent attempt at treatment. For
the same reasons, we agree that Mother did not show good cause for her
requested continuance.

## II. *Termination of Parental Rights*

[14] We have often noted that the purpose of terminating parental rights is not to
punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d
874, 880 (Ind. Ct. App. 2004). Although parental rights are constitutionally

protected, the law allows for the termination of such rights when parents are unable or unwilling to meet their responsibility as parents. *Id.* Indeed, a parent's interest must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009). The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[15]     The termination of parental rights is controlled by Indiana Code section 31-35-2-4(b)(2), which provides that a petition to terminate parental rights must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[16] The burden is on DCS to prove each element by clear and convincing evidence. I.C. § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1260–61. However, as Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of that subsection has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). If the court does not find that the allegations in the petition are true, it shall dismiss the petition. *Id*. at § 8(b).

[17] A pattern of unwillingness both to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, will support a finding that there exists no reasonable probability that the conditions will change. *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). An inability to provide adequate housing, stability, and supervision, combined with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best

interests. *Id.* Indeed, a factfinding court, "recognizing the permanent effect of termination . . . must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children." *In re D.G.*, 702 N.E.2d 777, 779 (Ind. Ct. App. 1998).

[18] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh evidence nor judge witness credibility. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* When we review a trial court's findings of fact and conclusions of law in a case involving the termination of parental rights, we first determine whether the evidence supports the findings; secondly, we determine whether the findings support the judgment. *A.D.S. v. Indiana Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*.

[19] "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id*. at 502 (quoting *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997)). If the evidence and inferences support the trial court's decision, we must affirm. *Id*. at 503.

## A. *Reasonable probability that the conditions resulting in removal will not be remedied*

[20] Mother first became involved with DCS through an IA in February of 2014. The children were removed from her care several months later in May of 2014, and A.W. and S.W. have not been returned to her care since that time. In the four and a half years between initial DCS involvement and the termination hearing held on October 24, 2018, Mother had checked out of one rehabilitation program after completing most of the program and immediately relapsed, losing her housing. After non-communication with the caseworker and failing to enroll after a previous referral, Mother completed an intensive outpatient program. After the completion of this program, Mother continued to test positive for both marijuana and cocaine. She did not demonstrate stable employment or housing throughout the four and half years leading up to the termination hearing. While she had recently begun another rehabilitation program, she was unable to demonstrate the ability to remain sober and provide a stable home for S.W. and A.W. For these reasons, we conclude that DCS met its burden of meeting this prong by clear and convincing evidence. Because DCS is only required to prove one prong of Indiana Code section 31-35-2-4(b)(2)(B), we do not address whether the continuation of the parent-child relationship poses a threat to the well-being of the children.

## B. *Best interests of the children*

[21] Here, since DCS first became involved in 2014, Mother has been unable to maintain sobriety or a stable home. The FCM and a therapist for A.W. and

S.W. testified that both children demonstrated significant behavioral issues from the lack of stability in their lives and from having had to act as parent to their younger siblings. Both individuals felt that A.W. and S.W. were in stable homes that provided appropriate love and discipline and that A.W. and S.W. had made significant strides in improving their behavioral issues. As Mother had not submitted to drug screens in several months leading up to the termination hearing, and had just recently checked into another treatment program, there was no evidence presented that she was able to provide an appropriate and stable home. We commend Mother's decision to seek substance abuse treatment and encourage her to continue on the path to sobriety; however, for A.W. and S.W., DCS has met its burden by clear and convincing evidence that termination is in their best interests.

## Conclusion

[22] The trial court did not commit error when it determined that Mother did not demonstrate good cause for a continuance. Additionally, DCS met its burden of demonstrating by clear and convincing evidence there is a reasonable probability that the conditions that resulted in removal will not be remedied and that termination is in the best interests of the children. For these reasons, we affirm the trial court's termination of Mother's parental rights to A.W. and S.W.

[23] Affirmed.

May, J., and Brown, J., concur.