**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 01 2013, 8:24 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. COCHREN**
Princeton, Indiana

ATTORNEYS FOR APPELLEE:

**RAYMOND P. DUDLO**
DCS, Gibson County Local Office
Princeton, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| J.C. (Minor Child), | ) ) | |
| and | ) ) | |
| H.B. (Mother), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  26A01-1205-JT-207 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE GIBSON CIRCUIT COURT, JUVENILE DIVISION
The Honorable Jeffrey F. Meade, Judge
Cause No. 26C01-1104-JT-8

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this termination of parental rights appeal, the evidence demonstrated that H.B. (Mother) was severely mentally handicapped and unable and unwilling to provide the necessary care for her daughter, J.C. Although Mother was offered supervised visitation with J.C., she was routinely late for the visits, displayed poor decision-making skills, and was not able to comprehend the care and supervision that J.C. required. Mother was also unable to manage money or find appropriate housing. She showed no improvement throughout the CHINS proceedings.

Three caseworkers and the guardian ad litem (GAL) all testified that terminating Mother's parental rights as to J.C. was in the child's best interest, and that J.C. should remain in pre-adoptive foster care rather than reuniting with Mother. Accordingly, we affirm the juvenile court's decision to terminate Mother's parental rights.[1]

FACTS

Mother and Father had their first child, A.C., on May 29, 2007, and the Indiana Department of Child Services (DCS) removed A.C. from their care one week later. There were concerns about the parents' mental handicaps and the fact that they were

---

[1] The juvenile court also terminated Father's parental rights as to J.C. However, Father is not a party to this appeal, and we therefore will refer only to those facts related to Father as necessary to fully address Mother's arguments.

unable and unwilling to provide the care that A.C. needed. DCS personnel substantiated the allegations of neglect against Mother during their initial assessment. Specifically, the DCS determined that Mother and Father were not able to manage their money and that they could not handle the changes and challenges involved in raising a child. The juvenile court ultimately terminated the parents' rights as to A.C. on December 9, 2008.

The DCS received a report on June 23, 2009, that Mother had given birth to another child, J.C., on June 2, 2009, and was not able to care for her. The DCS investigator determined that both parents suffered significant difficulty in understanding and supplying J.C.'s basic needs. These were the same difficulties that were exhibited during the CHINS and termination proceedings that involved A.C. The DCS removed J.C. from Mother's care and placed her with J.C.'s aunt.

At an initial CHINS hearing that was conducted on July 2, 2009, Mother admitted that she was improperly providing care for J.C. and that she and Father were unable or unwilling to do so. After it was determined that Mother made no reasonable efforts to improve, the DCS filed a verified petition to terminate Mother and Father's parental rights as to J.C. on April 14, 2011.

The juvenile court held a three-day evidentiary hearing that concluded on October 31, 2011. At the hearing, it was established that Father functioned at the level of a seven-and-one-half-year-old, and Mother functioned lower than a one-year-old in many areas and had no functioning above the level of a six-and-a-half-year-old.

Dr. Thomas Holsworth, the physician who performed assessments on both parents, testified that Mother suffers from a variety of primary "cognitive distortions," including denial of faults, motivational deficits, immaturity, and anxious avoidance. Appellant's App. p. 9. Dr. Holsworth also testified that these diagnoses would not change over time.

It was Dr. Holsworth's opinion that Mother could not function as a parent and that J.C. should remain with the pre-adoptive foster care parents rather than reuniting with Mother. It was also established that Mother has a history of seizures but did not take her medicine regularly, which could result in J.C. being left alone while Mother is incapacitated.

Although Mother participated in supervised visitation with J.C., she was consistently late in arriving for these visits. Mother's behavior during the visits displayed her poor decision-making and demonstrated that she was unable to comprehend the care and supervision that J.C. required. Mother would get angry and often lose her focus and attention on J.C. For instance, after J.C. choked on a toy during a visit, Mother left that toy in the room with J.C.

Mother was not able to obtain appropriate housing, manage her money, or learn how to care for J.C. At some point, Mother had no heat in her residence and was going to save some money to purchase a heater. However, once Mother had enough money to buy a heater, she instead chose to purchase a pair of shoes for herself. Mother showed no improvement throughout the CHINS proceeding, and she still lacked the skills and knowledge to provide for J.C. at the time of the termination hearing.

4

Although J.C. was originally placed with an aunt, she was eventually moved to foster care with the family who adopted J.C.'s sibling. That family also desired to adopt J.C. The GAL testified that it was in J.C.'s best interest to remain in her current placement. The DCS case managers agreed and believed that J.C.'s parents posed "an immediate safety risk" to the child. Tr. p. 191-92, 256-57, 347-48.

On January 23, 2012, the juvenile court entered findings of fact and conclusions of law terminating both Mother and Father's parental rights as to J.C. Mother now appeals.

DISCUSSION AND DECISION

I. Standard of Review

We initially observe that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). But parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260

5

(Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Mother's parental rights.

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

The elements that the DCS must allege and prove by clear and convincing evidence in order to effect the termination of parental rights are set forth in Indiana Code section 3l-35-2-4(b)(2), which provides:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is

6

removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

. . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b)(2).

We note that Indiana Code section 31-35-2-4 (b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## II.  Mother's Contentions

### A.  Consideration of Mental Health

Mother claims that the termination of parental rights order must be set aside because the juvenile court improperly considered her mental health as a basis for terminating her parental rights.  Mother contends that notwithstanding her mental retardation, she can "care for the basic needs of a child now and . . . her abilities and conditions have changed dramatically." Appellant's Br. p. 12.

7

Mother correctly observes that mental illness alone is not a sufficient basis for the termination of parental rights. Dull v. Delaware Cnty. Dep't of Public Welfare, 521 N.E.2d 972, 976 (Ind. Ct. App. 1988). However, mental illness can be considered a factor by the juvenile court in determining whether to terminate parental rights. Egly v. Blackford Cnty. DPW, 592 N.E.2d 1232, 1234 (Ind. 1992).

This is precisely what the juvenile court did here, and even though Mother argues that she has made significant progress that renders her able to care for J.C., she has not offered any support for those assertions. Moreover, the evidence is to the contrary, in that:

1) Dr. Holsworth believed that Mother's mental health diagnosis would not change over time and that she was incapable of parenting;

2) Mother has a failure to profit from experience and a denial of defaults;

3) Mother has a history of untreated seizures;

4) Mother would show up late for visits;

5) Mother's behaviors during visits displayed poor-decision making skills and demonstrated that she was unable to comprehend the care and supervision [that J.C.] required;

6) Mother left a toy in the same room with [J.C.] after [J.C.] had choked on the toy during a visit; and

7) Mother did not have proper housing or money management skills and in one instance after saving for a heater, she bought herself a pair of shoes instead.

Tr. p. 129, 131-34, 154, 159, 296-310, 338, 368.

8

In sum, Mother's mental illness, coupled with the evidence set forth above, supports the trial court's decision to terminate Mother's parental rights as to J.C.

## B. Consideration of Mother's Prior Termination of Parental Rights

Mother next claims that the termination order must be set aside because the juvenile court only terminated her parental rights because her rights had been previously terminated with regard to another child. As a result, Mother claims that her "constitutional rights under the equal protection clause of the 14th amendment of the United States Constitution have been violated." Appellant's Br. p. 13.

We initially observe that a parent's character is at issue in CHINS proceedings and proceedings to terminate parental rights. In re D.G., 702 N.E.2d 777, 780 (Ind. Ct. App. 1998). In D.G., the mother argued that admission of evidence of her prior termination of parental rights was error. A panel of this Court disagreed, observing that

> [s]uch evidence also demonstrates an habitual pattern of conduct and is relevant in determining whether [Mother] has developed or is likely to develop the ability or interest to provide a satisfactory home for D.G. We hold that specific instances of a parent's character, including evidence regarding a previous termination of parental rights, is admissible character evidence in a subsequent termination proceeding.

Id. at 780 (emphasis added).

Here, the juvenile court ordered supervised visits for the parents, and the DCS did not proceed to termination until April 14, 2011, just over twenty-one months following J.C.'s CHINS adjudication in July 2009. Mother had sufficient time to demonstrate the skills that she had learned in order to care for J.C., and she failed to make any

9

improvements. Thus, her claim that the juvenile court terminated her parental rights solely because of the prior termination with regard to A.C. fails.

## C. Conditions Remedied

Mother also argues that the termination of parental rights order must be set aside because the DCS failed to adequately establish that the conditions resulting in J.C.'s removal would not be remedied. Mother contends that the evidence demonstrated that she made a "vast improvement" in her parenting skills and that she "met all of the emotional, physical and intellectual well-being needs of [J.C.]." Appellant's Br. p. 11.

When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

The juvenile court may properly consider a parent's history of neglect, failure to provide support, lack of adequate housing, and lack of employment, among other things. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The juvenile court may also consider the services that the DCS has offered to a parent and the response to those services. In re M.S., 898 N.E.2d 307, 311 (Ind. Ct. App. 2008). In particular, the failure to exercise the right to visit one's child demonstrates a lack of commitment to complete the actions necessary to preserve the parent-child relationship. Lang v. Starke Cnty. OFC, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007).

As discussed above, the evidence presented at the termination hearing showed that Mother's inability to parent a child had not changed. Tr. p. 131-32, 154, 159, 183-85, 191-92, 256-57, 296-305, 309-10, 347-48. Three case managers testified that there was an "immediate safety risk" to J.C. if she remained with Mother. Id. at 191-92, 256-57, 347-48. Also, while the juvenile court ordered Mother to have supervised visits with J.C., Mother did not take full advantage of that opportunity and often showed up late for those visits. Id. at 309-10.

In short, the evidence established that Mother was unable to care for J.C.'s physical and emotional well-being. Mother has been unable to elevate her capacity throughout the years of her involvement with the DCS. As a result, it was proper for the juvenile court to conclude that there was a reasonable probability that the conditions that resulted in J.C.'s removal would not be remedied. In effect, Mother's claims amount to an invitation to reweigh the evidence—an invitation that we decline.

### D. Best Interests

Mother next asserts that the evidence was insufficient to support the juvenile court's conclusion that terminating her parental rights was in J.C.'s best interest. However, other than this bare assertion in the "summary of the argument" section in Mother's appellate brief, she does not present any specific challenges or arguments in support of this contention. Thus, Mother has waived the issue. See Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins., 837 N.E.2d 1032, 1037 (Ind. Ct. App. 2005) (noting that the argument must contain contentions on the issues presented,

11

supported by cogent reasoning, and each contention must be supported by citations to the authorities, statutes, and the appendix or parts of the record relied on and that "[a] party waives any issue for which it fails to provide argument and citations") (citing Ind. Appellate Rule 46(A)(8)(a)).

Waiver notwithstanding, we note that in determining the best interests of a child, the juvenile court is required to look beyond the factors identified by the DCS and should consider the totality of the evidence. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship. In re A.A.C., 682 N.E.2d at 545. Recommendations of the case manager and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination of parental rights is in a child's best interests. J.S., 906 N.E.2d at 236. A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same also supports a finding that termination of parental rights is in the child's best interest. Lang v. Starke Cnty. OFC, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007). The juvenile court may properly consider evidence of a parent's history of neglect, failure to provide support, and lack of adequate housing and employment. In re D.G., 702 N.E.2d at 779.

In this case, the GAL testified that it is in J.C.'s best interests for her to remain in her current foster placement. Tr. p. 445. And, as discussed above, the three DCS case

12

managers all testified that Mother and Father pose "an immediate safety risk" to J.C., despite their years of services aimed at reunifying them with their children. Id. at 191-92, 256-57, 347-48.

In short, we cannot say that the juvenile court's determination that it was in J.C.'s best interest that Mother's parental rights be terminated is clearly erroneous. Thus, we decline to set aside the termination order.

The judgment of the juvenile court is affirmed.

RILEY, J., and BARNES, J., concur.