## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 21 2016, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of A.C. (Minor Child),

and

D.C. (Mother)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 21, 2016

Court of Appeals Case No.
49A02-1604-JT-784

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Larry E. Bradley, Magistrate

Trial Court Cause No.
49D09-1601-JT-58

**Mathias, Judge.**

[1] The Marion Superior Court entered an order terminating the parental rights of D.C. ("Mother") to her minor child, A.C. ("Child"). Mother appeals and presents one issue, which we restate as whether the Indiana Department of Child Services ("DCS") presented evidence sufficient to support the trial court's termination order.

[2] We affirm.

## Facts and Procedural History

[3] Mother gave birth to Child in late October 2014. On January 1, 2015, DCS filed a petition alleging that Child was a child in need of services ("CHINS").[1] The CHINS petition alleged that Child had been removed from Mother after the police had found Mother in a hotel room, unconscious from drug use, while Child was sleeping. The petition also alleged that Child had been born with fetal alcohol syndrome or with a controlled substance in her system. The petition further alleged that Mother had tested positive for marijuana and methamphetamine, admitted to using ecstasy, had a history of prostitution, and lacked stable housing. Child was placed with Mother's mother and stepfather.

[4] The court held a detention hearing the following day and authorized Child's removal from Mother. The court also ordered Mother to establish Child's paternity. On March 27, 2015, Mother admitted that Child was a CHINS due

---

[1] The CHINS petition also named a putative father, T.S. Paternity testing later revealed that T.S. was not Child's father. As of the date of the termination hearing, Child's father had still not been identified.

to Mother's untreated substance abuse problem, and the trial court adjudicated Child to be a CHINS. A dispositional hearing was held on April 24, 2015, at the conclusion of which the trial court entered a dispositional decree and ordered Mother to participate in services, which included home-based case management, a substance abuse assessment, random drug screens, and visitation with Child.

[5] DCS referred Mother for home-based therapy at least twice, but Mother failed to participate in the service. DCS also referred Mother to home-based case management on two separate occasions, but Mother met with the case manager only twice during the two referrals. DCS also referred Mother for substance abuse treatment twice. Mother eventually completed a substance abuse assessment in September 2015 and was recommended to participate in an intensive outpatient program and a relapse-prevention program. Mother attended a few of the outpatient classes but was discharged from the program without successfully completing it. She was terminated from the outpatient Life Recovery program because she showed up to a meeting under the influence of some intoxicating substance.

[6] Mother was also inconsistent in her visitation with Child, failing to attend over half of the scheduled visitation sessions.[2] Despite the trial court's order to undergo random drug screening, Mother failed to submit to any random

---

[2] The DCS case manager testified that Mother attended "maybe 50%" of the scheduled visitations. Tr. p. 11.

screening. When Mother gave birth to another child in October 2015, the newborn tested positive for amphetamine and methamphetamine. Mother also failed to provide DCS with any "concrete answer" when DCS attempted to obtain her address. Tr. p. 13.

[7] Eleven months after the initial CHINS determination, on December 5, 2015, the trial court held a permanency hearing and changed Child's permanency plan from reunification with Mother to termination of Mother's parental rights and adoption by Mother's mother and stepfather. At this time, Mother had failed to submit to any drug screens, had not complied with the substance abuse treatment offered to her, and had only recently begun to attend visitations on a consistent basis.

[8] On January 14, 2016, DCS filed a petition to terminate Mother's parental rights to Child. The trial court scheduled a hearing for the following day, at which it appointed a Court Appointed Special Advocate ("CASA") for Child. The court continued the hearing twice so that Mother could be served. Mother was served but still did not appear at the February 12, 2016 hearing. At this hearing, the court scheduled a pretrial conference and ordered all parties to appear. Mother did not appear for the pretrial conference, nor did she appear at the March 17, 2016 evidentiary hearing.

[9] On March 24, 2016, after hearing evidence at the termination evidentiary hearing, the trial court entered an order terminating Mother's parental rights to Child. The trial court's order provided in relevant part:

8.  Services were ordered and referred to address [Mother's] issues of substance abuse and unstable housing.

9.  Home based case management services were referred two times but [Mother] did not engage, having met with her case manager twice since August 2015.

10. Multiple home based therapy referrals were made but [Mother] failed to engage.

11. [Mother] participated in a second referral for a substance abuse assessment but attended only a few of the intensive outpatient treatment program that was recommended.

12. [Mother] was still using drugs, having tested positive less than on month ago.

13. There is a reasonable probability that the conditions that resulted in [Child]'s removal and continued placement outside the home will not be remedied by her mother who has demonstrated by her lack of participation in services and court, and inconsistent exercise of parenting time, that she is unable or unwilling to address issues of drug abuse and instability. Ms. [A] has shown a pattern of not parenting her children by the fact that she has three other children who have been given up for adoption.

14. Continuation of the parent-child relationship poses a threat to [Child]'s well-being in that it would pose a barrier to obtaining permanency for her through adoption when her mother cannot provide a safe and stable environment to parent and offer permanency.

15. [Child] has been placed with her grandparents since her release from the hospital. This placement is appropriate and pre-adoptive.

16. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow her to be adopted into a stable and permanent home where her needs will be safely met.

17. There exists a satisfactory plan for the future care and treatment of [Child], that being adoption.

18. The Guardian ad Litem agrees with the permanency plan of adoption as being in [Child]'s best interests.

Appellant's App. pp. 11-12.

Mother now appeals.

## Termination of Parental Rights

The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). However, because Indiana Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *A.K.*, 924 N.E.2d at 220.

Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child

relationship only if it is clearly erroneous. *Id*. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## I. Trial Court's Findings of Fact

[16] Mother attacks several of the trial court's factual findings as being unsupported by the record. When the trial court enters findings of fact and conclusions thereon,[3] we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *In re D.B.*, 942 N.E.2d at 871.

*A. Finding 13*

[17] Mother first directs our attention to the trial court's finding number 13. Mother initially notes that the trial court referred to her "Ms. [A]," substituting Child's first name for Mother's last name. This is an obvious scrivener's error and does not constitute any reversible error. *See Barker v. City of W. Lafayette*, 894 N.E.2d 1004, 1010 (Ind. Ct. App. 2008) (holding that trial court's use of the word "unreasonable" instead of "reasonable" was a harmless scrivener's error).

[18] Mother also claims that Finding 13 is erroneous because it states that Mother had not "addressed" the issues of drug abuse and instability. Mother claims that

---

[3] *See* Ind. Code § 31-35-2-8(c) (amended effective July 1, 2012 to require the court to enter findings of fact when terminating parental rights or dismissing a petition to terminate parental rights).

this is incorrect because she did "address" her substance abuse by undergoing a substance abuse assessment and participating unsuccessfully in substance abuse treatment. However, Mother is playing word games. There was evidence that Mother had not *successfully* addressed her substance abuse problem, which is obviously to what the trial court was referring. Indeed, Mother's most recent child tested positive for amphetamine and methamphetamine at birth. Also, just a few weeks before the termination hearing, Mother was dismissed from the drug treatment program for showing up for a meeting under the influence. Given Mother's unsuccessful participation in the substance abuse treatment program and her continued abuse of illicit drugs, the trial court was well within its discretion to conclude that Mother had failed to *adequately* address her substance abuse problem.

[19] Mother makes a similar argument with regard to her "instability," which she takes as referring to her housing instability. She argues that there was no evidence as to where she was living. However, Mother refused to give DCS her address or allow DCS access to her home. From this, the trial court could infer that Mother lacked stable housing or that her housing was not adequate for Child. Thus, the trial court's finding of instability is not clearly erroneous.

[20] Mother also claims the trial court's Finding 13 effectively penalized her for consenting to the adoption of three of her other children. Mother does not deny that her other three children were adopted with her consent. Mother argues, however, that the trial court's consideration of her consent to these adoptions when deciding to terminate her parental rights has the potential to create a

"chilling effect" on parents' desire to consent to adoptions if they knew such consent could later be held against them. Under the particular facts and circumstances of this case, we disagree.

First, the termination of Mother's parental rights is not designed to punish the parent but to protect the child. *In re S.P.H.*, 806 N.E.2d at 880. Nor can we fault the trial court for considering the fact that Mother has either been unable or unwilling to care for her other children when considering the termination of her parental rights vis-à-vis Child. *See In re D.G.*, 702 N.E.2d 777, 780 (Ind. Ct. App. 1998) (holding that specific instances of a parent's character, including evidence regarding a previous termination of parental rights, is admissible character evidence at a subsequent termination hearing). Although consenting to adoption is generally a laudable act, given Mother's substance abuse problems, we cannot say that Mother's consent to the adoption of all of her other children was irrelevant to Mother's ability to parent Child.

*B. Finding 14*

Mother next attacks the trial court's Finding 14 that "[c]ontinuation of the parent-child relationship poses a threat to [Child]'s well-being in that it would pose a barrier to obtaining permanency for her through adoption when her mother cannot provide a safe and stable environment to parent and offer permanency." Appellant's App. p. 12. Mother claims this finding is erroneous because it suggests that Child could not be adopted unless her parental rights were terminated, whereas the evidence indicated that Mother had consented to

the adoption of her other children. However, Finding 14 is not simply about adoption; it explains Mother's inability to provide a safe and stable environment in which to care for and raise Child. Although Mother now claims that there was no evidence that she was asked to consent to the adoption of Child, the trial court still properly noted that the termination of Mother's parental rights would facilitate the adoption of Child by her grandparents.

[23] Moreover, we agree with the State that if Mother desired to consent to the adoption of Child, she could have expressed such a desire at the hearing. Instead of appearing at the hearing to either contest the termination of her parental rights or consent to the adoption, Mother repeatedly failed to appear. This failure to appear demonstrates ambivalence toward Child and Mother's parental rights. *See A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1252 (Ind. Ct. App. 2002); *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). We therefore reject Mother's argument that she should have been allowed to participate in the decision regarding the adoption of Child.

*C. Finding 15*

[24] Mother next attacks the trial court's Finding 15 that "[Child] has been placed with her grandparents since her release from the hospital. This placement is appropriate and preadoptive." Appellant's App. p. 12. Mother claims, and DCS admits, that Child was actually not placed with her grandparents until she was removed from Mother's care after Mother was found unconscious in the hotel

room. Although this finding is inaccurate, we cannot say it constitutes reversible error. The fact remains that Child has been in the care of her grandparents since being removed from Mother's care and that the grandparents wish to adopt Child into a caring, loving home.[4]

[25] We also reject Mother's claim that there was no reason for DCS intervention in this case. Mother is clearly addicted to illicit drugs and has shown an inability to care for Child, having been found unconscious in a hotel room with Child. Mother has failed to adequately address her substance abuse problem, failed to take advantage of the services offered by DCS, frequently missed scheduled visitations with Child, and failed to appear at the termination hearing.

## II. Conditions that Resulted in Removal

[26] Interspersed with her attacks on the trial court's findings, Mother also claims that the trial court erred in determining that the conditions which led to Child's removal from Mother or her placement outside Mother's home will not be remedied. When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind.*

---

[4] We likewise reject Mother's argument that Findings 16 and 17 are erroneous because they state that adoption into grandparent's home is a satisfactory plan for the future care and treatment of Child. As discussed more fully below, the trial court properly found that adoption by the maternal grandparents was a satisfactory plan for the care and treatment of Child.

*Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). However, the trial court may disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[27] Here, the trial court could reasonably conclude that the conditions that resulted in Child's removal from Mother and her placement outside of Mother's home, i.e., Mother's drug abuse, would not be remedied. Mother's substance abuse problems continued unabated throughout this case. She gave birth to another child who tested positive for amphetamine and methamphetamine, and she failed to successfully complete the substance abuse treatment offered to her. In fact, she was removed from an outpatient treatment program when she showed up under the influence. Accordingly, the trial court properly concluded that DCS proved by clear and convincing evidence that there was a reasonable probability that the reasons for Child's removal from Mother and her placement outside Mother's home would not be remedied. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (concluding that evidence supported trial court's finding that the conditions that led to children's removal, specifically parents' substance abuse, would not be remedied, where mother's substance abuse worsened when children were returned to her for a trial home visit, mother failed to participate in substance abuse treatment, and father abused drugs when the children were placed with him and failed to complete substance abuse treatment), *trans. denied*.

## III. Continuation of Parent-Child Relationship

[28] Mother also argues that the trial court erred in determining that the continuation of the parent-child relationship poses a threat to Child's well-being. Because we conclude that DCS proved that there was a reasonable probability that the conditions which resulted in Child's removal from Mother's care would not be remedied, we need not address Mother's arguments directed at the "threat" prong of Indiana Code section 31-35-2-4(b)(2)(B). *See In re A.K.*, 924 N.E.2d at 220 (noting that section 4(b)(2)(B) is written in the disjunctive and that the trial court is required to find that only one prong of subsection (b)(2)(B) has been established).[5]

## IV. Best Interests of the Child

[29] The trial court also reasonably concluded that termination of Mother's parental rights was in the best interests of Child. In determining what is in the best interests of the child, the trial court must look beyond the factors identified by DCS and to look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158.

---

[5] Even if we addressed this issue on the merits, Mother would not prevail. In addressing the "threat" prong of section 4(b)(2)(B), the trial court must consider the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *A.D.S.*, 987 N.E.2d at 1157. The trial court may consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment. *Id*. DCS is not required to provide evidence ruling out all possibilities of change. *Id*. Instead it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. *Id*.

As noted above, Mother failed to adequately address her substance abuse problem, failed to engage in the home-based case management, failed to provide random drug screens, and failed to consistently visit with Child. Child has spent all but a few weeks of her life in the care and custody of her maternal grandparents, who wish to adopt her. Mother has shown no willingness or ability to change her behavior and lifestyle to make her a suitable parent. Accordingly, the trial court did not clearly err in determining that the continuation of the parent-child relationship posed a threat to Child's well-being.

The trial court must subordinate the interests of the parent to those of the child, and the court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, the recommendation by the case manager or child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[30] Here, Mother repeatedly demonstrated her unwillingness or inability to parent Child. She failed to fully participate in services, failed to complete the substance abuse therapy offered to her, failed to attend most of the scheduled visitations, and failed to even appear at the termination hearing. The family case manager testified that termination of Mother's parental rights was in Child's best interests. Mother's mother and stepfather currently have custody of Child and plan to adopt her. Under these facts and circumstances, the trial court could reasonably conclude that termination of Mother's parental rights was in Child's best interests.

### V. Satisfactory Plan for Care and Treatment of Child

[31] Mother also briefly claims that the trial court erred in finding that there was a satisfactory plan for the care and treatment of Child. Such a plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). Here, Child had been in the custody of her maternal grandparents since her removal from Mother, and the

grandparents plan to adopt the child. This is sufficient to establish that there was a satisfactory plan for Child's care. *See id.* (affirming trial court's conclusion that there was a satisfactory plan for the care and treatment of the children where the children were in pre-adoptive placement with their paternal grandmother, who had cared for them for approximately one year).

## Conclusion

[32] Mother has demonstrated no reversible error in the trial court's factual findings, even though the findings contained one scrivener's error and one minor inaccuracy. Given Mother's continuing substance abuse problems, the trial court did not clearly err in determining that DCS had proven by clear and convincing evidence that there was a reasonable probability that the conditions which resulted in Child's removal from Mother's care would not be remedied and that the continuation of the parent child relationship posed a threat to Child's well-being. Moreover, the trial court did not clearly err in determining that termination of Mother's parental rights was in Child's best interests and that there was a satisfactory plan for Child's care and treatment, i.e., adoption by her maternal grandparents. In short, the evidence is sufficient to support the trial court's order terminating Mother's parental rights to Child.

[33] Affirmed.

Robb, J., and Brown, J., concur.